UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| DAWN KRANTZ, individually and as next friend of A.K., a minor, | ) ) ) | |
| Plaintiff, | ) ) | 3:14-cv-00006-RLY-MPB |
| vs. | ) ) | |
| JAN COCHENOUR, as probation officer, SPENCER CIRCUIT COURT, and SPENCER COUNTY, by and through its Commissioners, | ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

A.K., a minor, was given Concerta, a controlled substance used to treat attention deficit hyperactivity disorder, by a fellow student at South Spencer Middle School on school grounds during school hours. A.K. took the pill home and showed her mother, Dawn Krantz. Krantz, a police officer, initiated an investigation into the pill and the student who distributed it. The next morning, before Krantz had an opportunity to contact the school, A.K. was called into the principal's office in connection with pill distribution. An officer with the Spencer County Sheriff's Office determined A.K. had illegally possessed a drug on school grounds and relayed this information to Juvenile Probation Officer Jan Cochenour. Cochenour ordered that A.K. be taken to the Juvenile Detention Center in Vincennes, Indiana to await a hearing before a juvenile court judge.

Krantz initiated this lawsuit to redress A.K.'s pretrial detention. Krantz asserts that Cochenour[1] was negligent, and that she violated Indiana Code § 31-37-5-5, the Fifth Amendment to the U.S. Constitution, and Article I, Section 11 of the Indiana Constitution. Defendants now move for summary judgment on all claims, asserting that Cochenour is protected by absolute quasi-judicial immunity. The court agrees and therefore **GRANTS** summary judgment in their favor.

## I. Background

On October 9, 2012, Deputy Jeff Meredith of the Spencer County Sheriff's Office was "dispatched to South Spencer Middle School in reference to the distribution and/or possession of drugs by four juveniles, one of which was A.K., on school grounds." (Filing No. 33-10, Affidavit of Jeff Meredith ¶ 3). When he arrived, he met Principal James Wilson. (Filing No. 33-4, Spencer County Sheriff's Office Case Report No. 2012-008420 at 1). Principal Wilson explained that a student advised him a fellow student, D.L., had been handing out pills and provided him the locations and approximate times of said distributions. (*Id.* at 2). Principal Wilson then corroborated the student's statements by reviewing security videos that depicted D.L. having encounters with A.K. and her boyfriend, C.K. (*Id.*).

---

[1] Krantz' Complaint does not make clear if she is suing Cochenour in her personal capacity or her official capacity. In Defendants' opening brief, they highlight this uncertainty but proceed as if Cochenour was sued only in her personal capacity. In response, Krantz essentially agrees that she only advances personal capacity claims. Therefore, the court proceeds as if Krantz has only been sued in her personal capacity.

The Principal also spoke with A.K., and she gave the following statement:

> I recieved (sic) a white pill from [D.L.]. I took it because I wanted to show my mom and ask her what it was and so she has it at my house, I figured she would call the school. To be honest I really was nervous because I didn't want this hurting [D.L.], so that's why I took it. But I didn't take it because I don't do drugs and will never do drugs. But he talked about the pill first period and I was like are you stupid for taking that pill he said he took 5 of them so that really scared me. But it is indeed at my house. I know I shouldn't have taken it home but I made a mistake. So yeah never taken anything like that in my life. I don't know if he has more but I don't think he should be taking those. And it worrys (sic) me.

(Filing No. 33-6, Statement of A.K.).

Rockport Police Chief Dale Meredith and Krantz, a Rockport Police Officer, were also at the school when Deputy Meredith arrived. (Case Report at 1). Principal Wilson explained that Chief Meredith and Krantz were not working the case; they were there because Krantz' daughter, A.K., was one of the juveniles involved. (*Id.* at 1-2). Krantz gave Deputy Meredith a plastic bag containing a white pill, (i*d.* at 2), and research showing the pill was a Schedule II Controlled Substance. (Filing No. 33-2, Deposition of Dawn Krantz 62:17-23, 67:21-23). Krantz explained that A.K. brought the pill home from school the day before. (Case Report at 2). Krantz had planned to "check the pill out" and then contact the school the next day. (*Id.*). Krantz then took her daughter home and drafted a statement, pursuant to Deputy Meredith's request. (Krantz Dep. 67:23-68:1).

Subsequently, Deputy Meredith called Cochenour. Cochenour is a Probation Officer in Spencer County, Indiana. (Filing No. 33-1, Dep. of Jan Cochenour 6:20-23). In that capacity, she reports to Spencer County Chief Probation Officer Maralee Ruark.

(*Id.* 6:24-7:2, 8:4-9). If Cochenour is working on a formal case, the prosecutor supervises her work in conjunction with Officer Ruark. (*Id.* 8:25-9:4). If Cochenour is working on an informal case, she defers solely to Officer Ruark. (*Id.*).

Deputy Meredith told Cochenour that three juveniles were being held in the principal's office at South Spencer Middle School for possessing a controlled substance on school grounds. (*Id.* 39:11-14, 52:22-53:22). Cochenour then informed her superior, Officer Ruark, of the situation. (*Id.* 14:22-15:5). Officer Ruark replied there was a standing policy and that Cochenour was to follow it. (*Id.* 15:2-5). The policy Officer Ruark referred to is the policy the Spencer County Prosecutor and Juvenile Probation Office enacted on October 20, 2004 (the "Policy"). The Policy states:

> To All Spencer County Police Agencies and the Indiana State Police:
>
> The policy of the Spencer County Prosecutor and the Juvenile Probation Officer is that any juvenile arrested for drugs on school property shall be detained and subsequently transported to the Juvenile Detention Center in Vincennes, Indiana. . . .

(Filing No. 33-3). While the Policy purports to be a policy of the Spencer County Prosecutor and the Juvenile Probation Officer, Cochenour stated "it is a Court policy." (Cochenour Dep. 22:3-4).

Cochenour ordered A.K.'s and the other juveniles' detention pursuant to the Policy. (*Id.* 29:3-11). To this end, she filled out a Detention Affidavit, which stated she was "acting with probable cause that [A.K.] committed an offense that would be a crime if committed by an adult." (Filing No. 33-11, Detention Affidavit at 1). Cochenour testified that she believed A.K. "was involved in the possession of a Schedule II Control

4

Substance on school grounds based upon the information relayed to [her] by Jeff Meredith." (Filing No. 33-5, Affidavit of Jan Cochenour ¶ 9). (*See* Deputy Meredith Affidavit ¶ 6 ("At the time I spoke with Jan Cochenour on October 9, 2010, there was probable cause to believe A.K. was involved in the possession of a controlled substance on South Spencer Middle School Grounds")). Even Krantz, A.K.'s mother, agreed that A.K was in possession of a controlled substance on school property, which is a felony offense in Indiana. (Krantz Dep. 100:10-20).

In the Detention Affidavit, Cochenour also swore that she was "acting with probable cause that . . . detention is essential to protect the juvenile; or the community." (Detention Affidavit at 1). Yet, in her deposition, Cochenour agreed with the statement that "there was no evidence conveyed to [her] by Jeff Meredith that it was essential to protect [A.K.] or the community." (Cochenour Dep. 56:2-6, 80:1-7). Cochenour made this finding based solely on the fact that there is "a standing policy in Spencer County." (*Id.* 56:7-13). (*See id.* 29:3-9 (Q: "If you made the decision to detain [A.K.] and . . . Jeff Meredith said nothing to you to support a reason to detain the child . . . what basis did you have, other than the policy you say you were following, to order that she be detained?" A: "I had no basis other than the policy . . . .")).

After Cochenour ordered A.K.'s detention, Krantz drove A.K. to the jail and called Cochenour to let her know she was on the way. (Krantz Dep. 39:17-:40:3). According to Krantz, Cochenour told her, "I hope you understand my hands are tied; I have to do this." (*Id.* 40:8-9). A.K. was taken into custody in the early afternoon of October 9. (Filing No. 33-8, Transcript of A.K.'s Detention Hearing 5:2-6).

5

On the morning of October 11, 2012, Spencer Circuit Court Judge Jon Dartt presided over A.K.'s detention hearing. (*Id.* 1:13-18). First, Judge Dartt found that the hearing was timely, as it was held within 48 hours of A.K. being taken into custody. (*Id.* 5:2-17). Next, Judge Dartt explained to A.K. that she was detained in accordance with the court's "arrest policy":

> To continue in detention, I have to find 1 of 4 things. One that detention is essential to protect you or the community. And I will tell you that in this case that's the reason for your . . . original detention. The Court has a policy that whenever a drug issue comes up, especially in the school setting, there is initially . . . what I call an "arrest policy" in those kind of situations.

(*Id.* 6:1-8). Judge Dartt then stated he had reviewed the Case Report and found probable cause to believe A.K. committed a delinquent act. (*Id.* 5-7). Lastly, Judge Dartt found A.K. was not a danger to herself or the community, and allowed her to go home on the stipulation that she abide by certain conditions set by her probation officer and remain on informal house arrest. (*Id.* 13:10-19).

Ultimately, A.K.'s charges were informally adjusted by the prosecutor, and A.K. was not officially charged with any crime. (Krantz Dep. 34:13-17; *see* Filing No. 33-9, Program of Formal Adjustment).

**II. Legal Standard**

"A moving party is entitled to summary judgment if it can show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1015 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). The court views the evidence in the light most favorable to the non-moving party. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016).

6

**III. Discussion**

The court addresses an evidentiary objection raised by Defendants in their reply brief and then evaluates the liability of each Defendant in turn.

**A. Evidentiary Objection**

Krantz opposes summary judgment by, *inter alia*, arguing that Cochenour has enforced the Policy inconsistently. In support of that argument, Krantz offers Exhibit 4[2], a collection of Spencer County Sheriff's Office case reports and officer statements from cases involving juveniles possessing drugs or alcohol on school property. In their reply brief, Defendants' move to strike Exhibit 4 because it was allegedly obtained in an impermissible fashion. Indiana law makes clear that a juvenile's law enforcement records "are confidential and are available only in accordance with IC 31-39-4." Ind. Code § 31-39-3-4(a). Chapter 4 explains who can access these records (e.g., judges of a juvenile court and prosecutors), and, if applicable, under what circumstances. Law enforcement officers are permitted access to confidential juvenile records only if they are "acting within the scope of [their] lawful duties." Ind. Code § 31-39-4-2.

Krantz is not listed as an investigating officer in any of these cases, so Defendants assert the only way she could have obtained the case reports is by using her status as a police officer to search confidential juvenile records. Furthermore, Krantz admitted in her deposition that the officer statements in Exhibit 4 were prepared solely for the

---

[2] The parties refer to this exhibit as Exhibit 4, and that is how Krantz numbers it in her Designation of Evidence. (*See* Filing No. 38). However, the docket reflects that this evidence was actually filed as Exhibit 3. (*See* Filing No. 38-3). The court refers to the evidence as Exhibit 4 to avoid confusion.

7

purpose of assisting her in this case. (Krantz Dep. 46:20-47:11). Accordingly, Defendants allege Krantz obtained the case reports and officer statements outside of her lawful duties in violation of Indiana Code § 31-39-4-2. If true, the records are confidential as a matter of law and not admissible as evidence in this cause. Krantz could have filed a surreply pursuant to Local Rule 56-1(d) to respond to these allegations, but she did not do so. The court therefore finds that Exhibit 4 contains confidential juvenile records and **STRIKES** it. The court has not considered Exhibit 4 in ruling on Defendants' motion.

### B. Claims Against Cochenour

Krantz advances several claims against Cochenour in her Complaint, but they are all rooted in Cochenour's alleged violation of the Indiana Juvenile Code. According to the version of the statute in effect at the time,

> If the child was not taken into custody under an order of the court, an intake officer shall investigate the reasons for the child's detention. The intake officer shall release the child to the child's parent, guardian, or custodian upon the person's written promise to bring the child before the juvenile court at a time specified. However, the intake officer may place the child in detention if the intake officer reasonably believes that the child is a delinquent child and that:
>
> (1) the child is unlikely to appear before the juvenile court for subsequent proceedings;
>
> (2) the child has committed an act that would be murder or a Class A or Class B felony if committed by an adult;
>
> (3) detention is essential to protect the child or the community;
>
> (4) the parent, guardian, or custodian:
>
> (A) cannot be located; or

8

>> (B) is unable or unwilling to take custody of the child; or
>
> (5) the child has a reasonable basis for requesting that the child not be released.

Ind. Code § 31-37-5-5 (2012) (amended 2014 and 2016). Krantz maintains that none of the five exceptions applied here, and therefore Cochenour exceeded her authority by ordering A.K.'s detention.

Defendants move for summary judgment on many different grounds, but the court need only reach the first: absolute quasi-judicial immunity.

### 1. Quasi-Judicial Immunity Standard

As a general rule, "judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity." *D.L. v. Huck*, 978 N.E.2d 429, 433 (Ind. Ct. App. 2012). The purpose of judicial immunity is "to preserve judicial independence in the decision-making process." *Droscha v. Shepherd*, 931 N.E.2d 882, 889 (Ind. Ct. App. 2010). This rationale also justifies granting "immunity to non-judicial officers who perform quasi-judicial functions." *Id.*

In determining whether to apply quasi-judicial immunity, Indiana courts utilize the "functional approach" established by the U.S. Supreme Court in *Forrester v. White*, 484 U.S. 219, 224 (1988). *Huck*, 978 N.E.2d at 433. In other words, Indiana courts conduct "an inquiry into 'the nature of the function performed, not the identity of the person who performed it.'" *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015) (quoting *Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1226 (Ind. Ct. App. 1999)). "Absolute judicial immunity therefore extends to persons performing tasks so integral or intertwined with

9

the judicial process that they are considered an arm of the judicial officer who is immune." *Mendenhall*, 717 N.E.2d at 1226.

In *Huck*, the Indiana Court of Appeals explained, "there are two overarching scenarios in which the functional approach leads to a grant of immunity." 978 N.E.2d at 433. In the first scenario, "there is a direct adjudication of rights, either by a judge or by someone performing an action that is functionally equivalent to that of a judge." *Id.* "The second scenario involves individuals who are carrying out the explicit orders of a judicial officer." *Id.*

### 2.  Whether Cochenour is Entitled to Quasi-Judicial Immunity

Cochenour maintains that this case falls into the second scenario described in *Huck*. However, the *Huck* court noted that quasi-judicial immunity protects those who are acting pursuant to a judge's explicit order. There is no evidence to suggest that the Policy is a court *order*. In other words, Judge Dartt did not issue a formal document explaining that probation officers are *ordered* to detain juveniles arrested for possessing drugs on school grounds. Rather, the Policy is, as the name reveals, a policy. The parties do not address this discrepancy.

The court sees no principled reason to distinguish between a court policy[3] and a court order. At least under these circumstances, there is no meaningful difference between "policy" and "order." Regardless of what term is used, Cochenour knew that Judge Dartt required his probation officers to detain juveniles arrested for possessing

---

[3] Krantz maintains that the Policy is not a court policy. This argument is rejected below.

drugs on school property. She was simply following his directive when she instructed Deputy Meredith to detain A.K. on October 9. Cochenour made this clear in her deposition when she stated, "I had no basis [for detaining A.K.] other than the policy." (Cochenour Dep. 29:9). (*See id.* 56:10-11 ("I based my opinion [that A.K.'s detention was essential to protect her or the community] on the fact that we have a standing policy in Spencer County.")). Furthermore, Cochenour told Krantz, "I hope you understand my hands are tied; I have to do this." (Krantz Dep. 40:8-9).

As a sister district court noted, "[T]he duties of the probation officer are essentially and inextricably bound up with those of the court itself." *Blackwell v. Cook*, 570 F. Supp. 474, 478 (N.D. Ind. 1983). Indeed, pursuant to Indiana law, "Probation officers shall serve at the pleasure of the appointing court and are directly responsible to and subject to the orders of the court." Ind. Code § 11-13-1-1(c). By detaining A.K., Cochenour was merely enforcing Judge Dartt's "arrest policy." As such, she should be considered an arm of Judge Dartt, who is shielded with absolute judicial immunity. *See Mendenhall*, 717 N.E.2d at 1226-27 ("The act of executing or enforcing a court order is a function integral to judicial proceedings. Thus, a non-judicial officer who acts in furtherance of a valid court order is entitled to judicial immunity.") (citation omitted).

Krantz advances what the court construes as six arguments against granting Cochenour quasi-judicial immunity: (1) Judge Dartt did not have any personal involvement with A.K.'s case until after her detention; (2) Cochenour did not file a petition for a detention order with the court; (3) the Policy did not apply to A.K. because of the unique circumstances; (4) Cochenour does not apply the Policy equitably; (5)

11

whether the relationship between Cochenour and Judge Dartt creates a need for immunity is a question of fact; and (6) the Policy was not a policy of the court, but rather one generated by the Probation Office and the Prosecutor's Office. The court addresses each argument in turn.

First, it is irrelevant that Judge Dartt was not personally involved in this case prior to A.K.'s detention. While *Huck* requires the individual seeking immunity to show that she was carrying out a judge's explicit order, it does not necessarily call for the judge to be personally involved in that particular case. Indeed, in A.K.'s case, it was unnecessary for Judge Dartt to get personally involved because Cochenour acted pursuant to the court's standing "arrest policy" that applies to *any* juvenile caught possessing drugs on school property. Krantz' second argument, that Cochenour did not seek a detention order from the court, is unconvincing for the same reasons.

Third, Krantz claims the Policy did not actually apply to A.K. because, *inter alia*, she was arrested the day after her possession of drugs on school grounds, A.K. turned the pill over to her mother (a police officer) before she was arrested, and a police department was already investigating the matter. While the facts of this case are unique and suggest A.K. was trying to do what she considered to be the right thing, it is undisputed that A.K. possessed a controlled substance on school property. She was arrested for this by Deputy Meredith, so the Policy squarely applied.

Fourth, Krantz contends that Cochenour does not apply the Policy equitably, but there is no admissible evidence in the record to support that argument. Krantz' Exhibit 4

purportedly shows that Cochenour does not always detain juveniles when the Policy so requires, but the court struck this evidence.

Fifth, Krantz maintains that the quasi-judicial immunity inquiry is one that cannot be resolved as a matter of law, citing a single district court case. *See Laskowski v. Mears*, 600 F. Supp. 1568, 1573-74 (N.D. Ind. 1985) ("Whether the relationship between a given probation officer and a particular judge creates a need for immunity to preserve independent administration of the law . . . is a question of fact."). In addition to being non-binding authority, *Laskowski* is distinguishable. The question at issue in *Laskowski* was whether to grant absolute judicial immunity to a judge sued for wrongful discharge by a group of former employees. *Id.* at 1571. There was an issue of fact as to whether the judge's decisions to fire those individuals were acts taken in her capacity as a judge or an employer because the parties had not provided evidence on that point. *See id.* at 1574 ("In the case at bar, the facts which might implicate judicial independence are as yet undisclosed. I do not know how closely Judge Mears worked with her probation officers . . . . Summary judgment at this stage would be inappropriate."). Here, no factual inquiry is necessary. Defendants have shown that there are no issues of fact that would preclude summary judgment.

Lastly, Krantz asserts that the Policy is not actually a court policy. She emphasizes that the document submitted by Defendants plainly states it is the policy of "the Spencer County Prosecutor and the Juvenile Probation Officer." Defendants retort that while the Policy was created by the Spencer County Probation Office and Spencer County Prosecutor, it was subsequently adopted and implemented by Spencer County

13

Judges, including Judge Dartt. As evidence, they emphasize that during A.K.'s detention hearing, Judge Dartt explicitly stated that he has an "arrest policy" that applies "whenever a drug issue comes up, especially in the school setting." (Detention Hearing Transcript 6:5-8). Judge Dartt made it clear that A.K. was detained pursuant to that "arrest policy." (*Id.* 6:1-8). Additionally, Cochenour testified that the Policy "is a Court policy." (Cochenour Dep. 22:3-4). Krantz fails to produce any evidence to challenge Judge Dartt's statement or Cochenour's deposition testimony. As an example, Krantz could have created a dispute of fact by having an attorney who practices before Judge Dartt testify that this alleged policy does not exist. Simply stating that the Policy is not actually a court policy is not enough to stave off summary judgment.

The court holds that, in detaining A.K., Cochenour was performing a task so integral or intertwined with the judicial process that she must be considered an arm of Judge Dartt, who is immune from personal liability. *Mendenhall*, 717 N.E.2d at 1226. She is therefore entitled to absolute quasi-judicial immunity. Summary judgment in her favor on all claims is required.

### C. Claims against the Spencer Circuit Court

Krantz does not assert any claims directly against the Spencer Circuit Court in her Complaint. The single reference to the Spencer Circuit Court is as Cochenour's employer. (*See* Complaint ¶ 7 ("At all times relevant to the allegations herein, Jan Cochenour was employed as a Probation Officer for the Spencer Circuit Court.")). Accordingly, it appears that Krantz named the Spencer Circuit Court in her Complaint based upon a theory of *respondeat superior* or vicarious liability. Because the court

14

grants summary judgment for Cochenour on all counts, there can be no liability for the Spencer Circuit Court.

### D. Claims Against Spencer County

Krantz also does not assert any claims directly against Spencer County in her Complaint. In her response brief, she explains that she named Spencer County as a defendant "due to the fact that the Probation Department receives its funding from the county through county revenues." (Filing No. 37 at 20). Assuming, *arguendo*, that there is an agency relationship between Spencer County and Cochenour, there can be no liability for Spencer County because Cochenour is not personally liable.

## IV. Conclusion

Therefore, Defendants' Motion for Summary Judgment (Filing No. 31) is **GRANTED**. Krantz' Exhibit 4 (Filing No. 38-3) is **STRICKEN**.

In preparation for trial, Defendants filed a motion in limine to exclude evidence that may be used or testimony that may be solicited at trial. Because the court grants Defendants' Motion for Summary Judgment, there will not be a trial. Therefore, Defendants' Motion in Limine (Filing No. 48) is **DENIED AS MOOT**.

**SO ORDERED** this 25th day of July 2016.

                                                                              _____
                                                                              RICHARD L. YOUNG, CHIEF JUDGE
                                                                              United States District Court
                                                                              Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.